**HOUDAILLE INDUSTRIES, INC.,**
**Relator,**

v.

**The Honorable Warren P. CUNNINGHAM**
**et al., Respondents.**

**No. B–4061.**

Supreme Court of Texas.

Dec. 5, 1973.

Dissenting Opinion Dec. 12, 1973.

Vinson, Elkins, Searls, Connally & Smith, Raybourne Thompson, Jr., Houston, for relator.

Bracewell & Patterson, William Wilde, Houston, for respondents.

STEAKLEY, Justice.

This is an original mandamus proceeding instituted by Houdaille Industries, Inc., as Relator, against the Respondents, Honorable Warren P. Cunningham, presiding Judge of the 164th Judicial District Court of Harris County, Texas, and Southwestern Laboratories, Inc. Relator is seeking a writ of mandamus requiring Judge Cunningham to vacate his order which commanded Relator to produce certain reports and photographs for inspection and copying by Southwestern. The operation of the order has been stayed, pending our action in this proceeding.

The order under review was entered in response to Southwestern's discovery motion in a pending suit of Houdaille against Southwestern involving asphalt paving provided for the use of travelift cranes at Houaille's concrete products plant in Brazoria, Texas. Houdaille alleged that Southwestern negligently performed a foundation investigation and pavement design which proximately caused the damage it sought in the stated amount of $714,497.

The motion of Southwestern sought to discover reports, test data, laboratory results, reports of investigations, samples, photographs and analyses obtained from Spencer Buchanan or any of his agents, servants or employees, and from Shilstone Testing Laboratory, Bayou Industries, Inc., and Allen Banks. These individuals and firms had previously been employed by Houdaille to investigate the paving in question. By sworn answer, Houdaille stated that the individuals in question would not be called as witnesses by Houdaille, that they were used solely for consultation purposes, and that they were employed subsequent to the occurrences upon which its suit was based. Houdaille asserted that the reports and photographs were privileged under Rule 167[1] and, therefore, were not properly discoverable. Subsequently, Judge Cunningham ordered all reports and photographs furnished for an *in camera* inspection and review by him, and Houdaille tendered the following documents in five sealed packets:

(1) Report of Spencer Buchanan;

(2) Various reports of Robert Bigham, an associate of Spencer Buchanan;

(3) Shilstone Testing Laboratory Report;

(4) Photographs of the paving failure taken by Allen Banks;

---

1. The reference is to the Texas Rules of Civil Procedure.

(5) Reports and photographs prepared by Bayou Industries;

(6) Aerial photographs.

After inspecting and reviewing these documents and photographs, Judge Cunningham ordered that Houdaille produce specified portions of number (1), and all of numbers (3), (4), and (5) for Southwestern to inspect and copy; the remaining portions of number (1), and numbers (2) and (6) were ordered to be returned to Houdaille without inspection by Southwestern, "for the reason that those items contain the mental impressions and opinions of counsel and the experts whom Plaintiff will not call as witnesses . . . ", and "for the reason that those items contain the mental impressions of counsel for Plaintiff, are work product of counsel and, therefore, are not discoverable." Only Houdaille seeks relief from this order in the mandamus proceeding at hand. Our jurisdiction to grant such relief, if the order under attack was not within the authority of the presiding judge, is well settled. Commercial Travelers Life Ins. Co. v. Spears, 484 S.W.2d 577 (Tex.1972); State v. Ashworth, 484 S.W.2d 565 (Tex. 1972); Russell v. Young, 452 S.W.2d 434 (Tex.1970); Maresca v. Marks, 362 S.W. 2d 299 (Tex.1962); Crane v. Tunks, 160 Tex. 182, 328 S.W.2d 434 (1959).

The validity of the discovery order is to be determined under the provisions of Rule 167, the controlling terms of which, shown in italics, were added by amendment effective February 1, 1973:

Rule 167. Discovery and Production of Documents and Things for Inspection, Copying or Photographing

Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to such limitations of the kind provided in Rule 186b as the court may impose, the court in which an action is pending may order any party:

(1) To produce and permit the inspection and copying or photographing by or on behalf of the moving party of any of the following which are in his possession, custody or control: (a) any designated documents, papers, books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain, *or are reasonably calculated to lead to the discovery of,* evidence material to any matter involved in the action; and (b) any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment; and

. . . . . .

The identity and location of any potential party or witness may be obtained from any communication or other paper in the possession, custody or control of a party, *and any party may be required to produce and permit the inspection and copying of the reports, including factual observations and opinions, of an expert who will be called as a witness.* Provided, that the rights herein granted shall not extend *to other written statements of witnesses or* other written communications passing between agents or representatives or the employees of either party to the suit, or *to other* communications between any party and his agents, representatives, or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation or defense of such claim or the circumstances out of which same has arisen.

The relevant 1973 amendments to Rule 186a are likewise shown in italics.

Rule 186a. Scope of Examination

. . . Provided, however, that subject to the provisions of the succeeding

sentence, the rights herein granted *shall not extend to the work product of an attorney* or to communications passing between agents or representatives or the employees of either party to the suit, or communications between any party and his agents, representatives, or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation, or defense of such claim, or the circumstances out of which same has arisen, *and shall not require the production of written statements of witnesses or disclosure of the mental impressions and opinions of experts used solely for consultation and who will not be witnesses in the case or information obtained in the course of an investigation of a claim or defense by a person employed to make such investigation.* Provided, further, that information relating to the identity and location of any potential party and of persons, *including experts, having knowledge of relevant facts, and the reports, factual observations and opinions of an expert who will be called as a witness, are discoverable.*

In brief, it is the position of Southwestern that the reports and photographs in question are within the scope of discovery intended by Rule 167; that they are neither privileged nor immune from discovery under the rule, either expressly or by implication; and that the Banks photographs are not protected from discovery as "work product." Houdaille, on the other hand, and as before stated, asserts that all the documents in question are privileged and as such not subject to discovery.

At all times since its original promulgation in 1940, Rule 167 has contained the work product restrictive proviso, together with an exception from operation of the rule of written statements of witnesses. The text of Rule 167 immediately prior to the 1973 amendments, with italics added, was as follows:

Rule 167. Discovery and Production of Documents and Things for Inspection, Copying, or Photographing

Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to such limitations of the kind provided in Rule 186b as the court may impose, the court in which an action is pending may order any party to produce and permit the inspection and copying or photographing by or on behalf of the moving party, of any designated documents, papers (*except written statements of witnesses*), books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody, or control; or order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying or photographing the property or any designated object or operation thereon which may be material to any matter involved in the action. The order shall specify the time, place and manner of making the inspection, measurement or survey and taking the copies and photographs and may prescribe such terms and conditions as are just, *provided* that the rights herein granted shall not extend to the written communications passing between agents or representatives or the employees of either party to the suit, or communications between any party and his agents, representatives, or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation or defense of such claim or the circumstances out of which same has arisen, except that information relating to the identity and location of any potential party or witness to the occurrence at issue may be obtained from any communication in the possession, custody, or control of any party.

The exceptions with respect to work product and written statement of witnesses have been rigidly enforced. See State v. Ashworth, 484 S.W.2d 565 (Tex.1972); Ex Parte Hanlon, 406 S.W.2d 204 (Tex. 1966); Ex Parte Ladon, 160 Tex. 7, 325 S.W.2d 121 (1959); Shirley v. Dalby, 384 S.W.2d 362 (Tex.Civ.App.1964, writ ref'd n. r. e.); and Munden v. Chambless, 315 S.W.2d 355 (Tex.Civ.App.1958, writ ref'd n. r. e.).

These limitations upon discovery which had been carried forward in succeeding amendments to Rule 167 were modified by the 1973 amendments to the extent of providing that "any party may be required to produce and permit the inspection and copying of the reports, including factual observations and opinions, of an expert *who will be called as a witness.*"[2] In correlation to these provisions in Rule 167, a coincident amendment to Rule 186a provided that the reports, factual observations and opinions of an expert *who will be called as a witness are discoverable.* Also, Rule 186a was further amended to provide that the right to depose a person, otherwise authorized by the rule, "shall not require the written statements of witnesses or disclosure of the mental impressions and opinions of experts used solely for consultation and who will not be witnesses in the case." So the right to depose a witness, expert or not, is undisturbed by the amendments except that such right is subject to the newly stated restrictions.

■ Thus, it may be seen that the 1973 amendments spoke specifically to the matter of discovery rights respecting expert witnesses and liberalized the discovery rules to the extent of permitting discovery of the reports of experts, including their factual observations and opinions, when they will be called as a witness. There was a twofold purpose: on the one hand, to expand discovery rights to authorize discovery of the reports of expert witnesses upon the conditions stated, and on the oth-er, to make clear that the work product provisions of the original Rule 167 restrictive proviso would not govern discovery procedures as to them. As stated, Houdaille has disclaimed by sworn answer that Spencer Buchanan and the experts of Shilstone Testing Laboratory will be called as witnesses; it follows that their reports are not discoverable.

■ In this connection, Houdaille states in its affidavits and answers to the motion for discovery that while it may not utilize the experts of Bayou Industries, Inc., as witnesses in chief, it may do so for rebuttal or impeachment purposes. It insists that the reports of such witnesses are also protected from discovery under these circumstances. The 1973 amendments suggest no exception in this respect, and we hold that none was intended. Their clear purport is to protect a party utilizing the assistance of experts from discovery of their reports only when they will not be used as a witness, whether in chief or otherwise.

We hold, then, that the reports of Spencer Buchanan and Shilstone Testing Laboratory, all of which were prepared by experts who will not be called as witnesses, are not discoverable; but that the presiding judge properly ordered discovery of the reports of experts prepared by Bayou Industries.

We come now to the photographs that were included in the discovery order of the presiding judge. As before noted, the materials sought to be discovered were delivered to the presiding judge in sealed packets and were inspected by him *in camera* prior to the entering of his discovery order. These packets were brought forward here. The Banks packet contains photographs only, with no suggestion that they were accompanied by or formed any part of a written report of an expert. The Bayou packet, on the other hand, contains numerous photographs which appear to have been utilized in tests conducted by Bayou pursuant to Bayou's employment by

2. Italics are added throughout.

Houdaille, the results of which were the subject of the expert reports in question. We have held that the Bayou reports are discoverable, since Houdaille has stated the Bayou experts may be used as rebuttal witnesses. It is the position of Houdaille, however, that both character of photographs are protected from discovery under the restrictive proviso of Rule 167, regardless of the right of Southwestern to discover the Bayou reports. Houdaille says that the Rule 167 proviso, as amended, was intended to cover any communication and not only written communication; and that the photographs in question constituted communications with its agents and representatives made in connection with the pre-trial investigation of its claim, and that as such they were immune from discovery. We disagree.

We first discuss the Banks photographs which, as noted, did not accompany and were not an integral part of a report in writing. As we have said, the purpose of the 1973 amendments to Rule 167 as here relevant was to liberalize the discovery rules to the limited extent of permitting discovery of the reports of an expert who will be called as a witness. No other change was intended either in the work product limitations in the restrictive proviso, or specifically as to photographs. The original proviso of Rule 167 was carried forward with the 1973 amendments, but certain wording was added for the purpose of correlation with the newly authorized right to discover the reports of expert witnesses. Whereas prior to 1973 the proviso read "provided that the rights herein granted shall not extend to *the written communications* passing between agents or representatives or the employees of either party to the suit *or* communications between any party and his agents, representatives, or their employees" under the conditions stated, it was amended to read "provided that the rights herein granted shall not extend to *other written statements of witnesses* [thus preserving the exception from discovery of written statements of witnesses previously appearing in

parentheses in the forepart of Rule 167] *or other* written communications passing between agents or representatives or the employees of either party to the suit, *or to other* communications between any party and his agents, representatives, or their employees," under the conditions stated. The language "other communications between any party and his agents, etc.," refers to communications of the same type as those covered by the preceding restriction, i. e., "other written communications passing between agents, etc., of either party . . . ."

As here relevant, and except as to the reports of expert witnesses, it is evident that the work product limitations in the Rule 167 proviso were intended to be enforced as originally written, and that as originally written the proviso embraced only communications in writing: "provided that the rights herein granted shall not extend *to the written communications* . . . ." It is likewise evident that the wording added to the proviso in 1973 in the manner and for the purposes discussed above, was not intended to effect any change in this respect, and that the proviso continues to protect from discovery under the stated conditions only communications that are written.

■ The question which then occurs is whether photographs are written communications within the intendments of the proviso. If so, they are immune from discovery under the stated conditions; otherwise, they are subject to discovery under the express terms of Rule 167 as ". . . designated . . . photographs . . .." We hold that photographs are not written communications and are not within the terms of the Rule 167 proviso. It follows that the Banks photographs were subject to discovery by Southwestern as ordered by the presiding judge.

■ The above ruling removes any question respecting the Bayou photographs that accompanied the written reports which were ordered discoverable by the presiding

judge, together with the photographs. In any event, however, photographs that are a constituent of a bona fide report in writing of an expert take on the discovery character of the written report and are governed by the provisions of Rule 167 applicable thereto, i. e., photographs are subject to discovery, or not, as is the written report of which they are an integral part. Cf. Yowell v. Hunter, 403 Ill. 202, 85 N.E.2d 674 (1949).

Accordingly, and for the reasons stated, we hold that the reports prepared by Bayou Industries with the accompanying photographs, and the photographs made by Allen Banks, are discoverable as ordered by the presiding judge. The reports of Spencer Buchanan and Shilstone Testing Laboratories are not discoverable under the terms of Rule 167, and the discovery order should be modified to this extent. The presiding judge has stayed his order pending and subject to our rulings, and actual issuance of a writ of mandamus is not necessary.

POPE, J., dissents.

POPE, Justice (dissenting).

I respectfully dissent from that part of the opinion of the majority which holds that a photograph is not a written communication and protected from discovery by the provisions of Rule 167. The majority opinion does not disclose whether it reaches its conclusion because a photograph is not written or because it is not a communication or both. Its only treatment of the subject is contained in its holding: "We hold that photographs are not written communications and are not within the terms of the Rule 167 proviso."

The word, "photograph," is a joinder of the Greek words, "photo," meaning light and "graph" meaning writing. Maps and diagrams which are prepared subsequent to an occurrence or transaction upon which a suit is based and which are made in connection with the prosecution, investigation or defense of a claim are eligible for treatment as writings within the work-product protection. Photographs have always been treated like maps and diagrams. III J. Wigmore, Evidence § 790 (1940); 2 C. McCormick & R. Ray, Texas Law of Evidence §§ 1464, 1465 (1956).

The holding that a photograph is not a writing under Rule 167, Tex.R.Civ.P., conflicts with our earlier decision that a photograph is "written evidence" under Rule 281, Tex.R.Civ.P. By Rule 281 jurors are permitted to take into the jury room "any written evidence, except the depositions of witnesses." This court in Texas Employers' Ins. Ass'n v. Crow, 148 Tex. 113, 221 S.W.2d 235, 236 (1949), wrote: "In Texas it has been uniformly held by the courts that ordinary photographs constitute 'written evidence' as the phrase is used in Rule 281 . . . ." See Dallas Ry. & Terminal Co. v. Orr, 147 Tex. 383, 215 S.W.2d 862 (1949); Dallas Ry. & Terminal Co. v. Durkee, 193 S.W.2d 222 (Tex.Civ.App. 1946, writ ref'd n. r. e.); Younger Bros. v. Ross, 151 S.W.2d 621, 626 (Tex.Civ.App. 1941, writ dism'd); 2 C. McCormick & R. Ray, Texas Law of Evidence § 1466 (1956). It would seem that the same picture which is considered "written" under Rule 281 should also be considered "written" under Rule 167.

We come then to the other matter, whether a picture is a communication. "Communicate" means, among many things, "to make known; to give by way of information," Webster's New International Dictionary (2d ed. 1954). It means "to impart, bestow, or convey; to make known; to give by way of information." Prevost v. Morgenthau, 70 App.D.C. 306, 106 F.2d 330, 334 (1939); Whitford v. North State Life Ins. Co., 163 N.C. 223, 79 S.E. 501, 502 (1913). A "communication" denotes the fact that one person has brought an idea to the perception of another. Restatement of Torts § 559, comment a (1938). A photograph is one form of communication. Restatement of Torts § 565, Illustration 1 (1938). Information may be

communicated in a number of different ways. One can write down a lengthy description of the arrangement of the streets of Manhattan, but an aerial photo will more clearly and fully and more quickly transmit that same information.

Pictures, like words, are effective instruments of communication. Like words, they teach. They inform. They demean. They hurt. They shock. They caution. Pictures, we have previously decided, are written evidence. I would reaffirm that holding. Texas Employers' Ins. Ass'n v. Crow, *supra*.